## GRACE STOWE TAMM DENNIS v. JOHN SWANSON.[1]

January 25, 1929.

No. 27,011.

See 2 R. C. L. 629; 1 R. C. L. Supp. 596; 4 R. C. L. Supp. 121; 5 R. C. L. Supp. 106; 6 R. C. L. Supp. 107.

[1]Reported in 223 N. W. 288.

268

*Norton & Norton,* for appellant.
*Milton A. Hall,* for respondent.

HILTON, J.

The defendant appeals from an adverse judgment holding that a certain deed and contract for a deed constitute an equitable mortgage and that the attempted cancelation by defendant of said contract for a deed is void and of no effect.

On and prior to March 29, 1926, plaintiff was the registered owner of two adjoining lots in the city of Minneapolis. On that date she entered into a contract with the Building Finance Corporation, hereinafter referred to as the company, for the building of a dwelling house on each of said lots. Said contract contained the following provisions:

"Parties of the second part [plaintiff] simultaneously with the execution of this contract assigned, transferred, and conveyed by warranty deed all their right, title and interest in and to the above described premises. It is understood and agreed between the parties hereto that there is a mortgage covering the above described premises to the amount of $250 which the second party authorizes the first party to pay after the buildings are partially completed and a new mortgage made. It is understood that the new mortgage made will absorb the mortgage which is now on record. * * * Second party agrees to pay all taxes that may be levied against said property subsequent to the year 1924. It is agreed that the second party will when notified by the first party [the company] in writing execute and assume a mortgage loan and interest thereon on one or both of the above described lots and that they shall execute same

within three days after notice is given to the amount of which shall be about fifty (50%) per cent the appraisal value, and the proceeds of said loan or loans are to be applied against this contract. * * * Parties of the second part agree to surrender to the first party this contract the day a first mortgage loan is made and to execute and accept back a contract for deed."

The lots however were not conveyed until the houses were well along toward completion and at what was termed "the mortgage stage." The cases involving each of the two properties were tried together and judgment ordered in each. Judgment was entered in the lot 22 case and is the only one here being considered.

Plaintiff gave to one Paul L. Brown a mortgage on lot 22 for $2,500, dated June 1, 1926, executed June 7, and filed with the registrar of titles on June 18. This was the new mortgage loan referred to in the building contract. On June 9, 1926, plaintiff executed a warranty deed to Naomi Byrnes of said lot 22, subject to said $2,500 mortgage, which deed was filed with the registrar of titles on August 20, 1926, and a certificate of title issued.

On July 8, 1926, a contract for a deed on lot 22, Naomi Byrnes to plaintiff, dated July 1, 1926, was executed but never filed with the registrar of titles. This contract stated a consideration of $6,325, of which $1,175 was acknowledged as having been paid and the $2,500 mortgage was assumed, the balance of $2,650 to be paid in monthly instalments.

About the time of executing the contract for deed, the dwelling house was completed and plaintiff entered into possession. C. J. Byrnes was the official in control and manager of the company, and by his direction the transfers were made to and by Naomi Byrnes, his sister. She had no personal interest in the transaction. On October 4 Naomi Byrnes executed and delivered to defendant an assignment of the contract for a deed wherein it was stated that there remained due on said contract covering lot 22 the sum of $2,575.95. Defendant purchased this contract at a discount of 25 per cent from the amount due, and he is the owner and holder thereof. On the same date Naomi Byrnes executed and delivered to

defendant a warranty deed to said lot 22, which was filed with the registrar of titles on October 9 and a certificate of title issued. There is no controversy over the foregoing facts.

There was no memorial appearing on any certificate of title showing any interest, right, title or claim of plaintiff to said lot, said contract for a deed not appearing thereon nor its assignment to defendant. The court made findings that it was the mutual intention of plaintiff and the company that the execution and delivery of the deed and contract for deed should constitute an equitable mortgage and that the title to the property was intended to be conveyed as security for the balance of the indebtedness remaining due from plaintiff to the company under the building contract.

The court found, as a conclusion of law, that as between plaintiff and the company and between plaintiff and Naomi Byrnes said deed and contract were, on October 4, 1926, an equitable mortgage. Further facts found were that defendant dealt with C. J. Byrnes, secretary and treasurer of the company, and as between said parties said transaction was intended to be and in fact was a purchase of the claim of the company upon plaintiff under said contract for deed, secured by conveyance of the legal title, and was not a purchase of said property subject to said contract; that Naomi Byrnes paid no consideration for said property and had no actual interest therein, of which facts defendant had knowledge or notice; that at the time he purchased said contract defendant had actual knowledge that plaintiff had been the owner of said lot prior to the conveyance thereof to Naomi Byrnes; that the company had built for plaintiff the house in question and that such conveyance had been made as part payment for said house, and that plaintiff was then in possession and occupancy thereof; that prior to the commencement of the action, defendant undertook to terminate the rights of plaintiff in the property described by serving upon her written notice of the cancelation of such contract for deed.

As further conclusions of law, the court found that plaintiff was entitled to judgment decreeing (1) that the deed and contract in question constituted an equitable mortgage to secure the balance of

the indebtedness remaining due; (2) that the rights and interests of the parties to this action and to the property described are the lawful interests and rights of equitable mortgagor and mortgagee; (3) that the attempted cancelation of said contract was void and of no effect; (4) that upon filing with the registrar of titles a certified copy of the judgment and decree he be authorized and directed to make due record of all facts proper to disclose the rights and interests of the plaintiff in and to said lot.

■ All that is involved in this case is whether the deed and contract for a deed constitute an equitable mortgage, and its solution will determine whether plaintiff has a right of redemption after foreclosure. There can be no question but that the judgment herein is right provided the findings of fact are correct and supported by the evidence. We think they are. It is the contention of defendant that there was no evidence to warrant the court in finding that the transaction constituted an equitable mortgage. It is true that neither plaintiff nor Byrnes, representing the company, testified directly on that point. However, if from the whole situation as it appeared during the trial of the case, taking into consideration the building contract referred to, an understanding did in fact exist, and the parties so intended, that the lot had been deeded to Naomi Byrnes as security for the payments of $40 per month as well as the taxes, insurance, etc., as stated in the contract for a deed, until the amount due had been liquidated, then the court's findings of fact should stand. We are of the opinion that such situation exists. Buse v. Page, 32 Minn. 111, 19 N. W. 736, 20 N. W. 95; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Citizens Bank of Morris v. Meyer, 149 Minn. 94, 182 N. W. 913; Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623.

■ Defendant insists here that he bought the real property itself and that the contract for a deed went with it. The contention on the part of plaintiff is that all that he bought was the contract for a deed and that the warranty deed was in the nature of security therefor, and this was evidently the trial court's view. This latter conclusion is supported by the evidence, for defendant himself testi-

fied that he purchased the contract for a deed and that the deed was taken as security for the money paid for the contract. Naomi Byrnes, who held the legal title, had already sold lot 22 and the building thereon to plaintiff under a contract for a deed. It was evident that she did not intend to sell the same property to defendant. Defendant did not examine the records in the office of the registrar of titles, and made no inquiry of Byrnes, plaintiff or anyone else as to the rights of the respective parties. He knew plaintiff was in occupancy of the building. If he had examined the records of the registrar of titles he would have found evidence at once to put him on inquiry. He testified that he understood the lot had been sold by plaintiff to Byrnes as a part payment or first payment on the property (a part payment on an indebtedness). It is significant that the mortgage given to Brown, dated June 1, executed June 7, and filed for registration June 18, for $2,500, on lot 22, was of a date long prior to that of the warranty deed and the contract for a deed. The Brown mortgage could not have been one simply covering the bare lot, for it appears in the contract for a deed which was assigned to defendant that the amount paid down thereon was $1,175, and this at the most would have been the value of the lot. No one would loan $2,500 on a lot of that value, and defendant is charged with notice of that fact and that there must have been at that time a building completed or well advanced toward completion on the property. Defendant must have or should have known that the items going to make up the $6,325 were: $1,175, the price of the lot; $2,500 covered by the mortgage in question (which Byrnes received) ; and the balance due of $2,650.

■ A contract for a deed is a non-negotiable instrument, and an assignee thereof takes no other or greater rights than had the original grantor thereof. Even if defendant had not had notice of plaintiff's rights, the deed and contract for a deed constituted an equitable mortgage. Plaintiff can assert the same rights against defendant that she might have asserted against Naomi Byrnes or the company. State ex rel. Minn. Ry. Const. Co. v. Lake City, 25 Minn. 404; Moffett v. Parker, 71 Minn. 139, 73 N. W. 850, 70 A. S. R.

319; Quigley v. Welter, 95 Minn. 383, 104 N. W. 236; 2 R. C. L. 629, and cases cited; 5 C. J. 958, 962, and cases cited.

■ The conclusions reached in the case of Abrahamson v. Sundman, 174 Minn. 22, 218 N. W. 246, are in no way affected by this opinion. It held that under the facts therein stated possession of real estate which had been registered under the Torrens act was not notice except as to a lease for a period not exceeding three years. That holding had to do with persons who are without notice of the rights of the one so in possession. It has no application to a situation such as we have here. There is much force to the suggestion made by the trial court in its memorandum wherein it is stated:

"I am inclined to think that Naomi Byrnes was guilty of constructive fraud in registering title under the deed and suppressing the contract. She (representing her brother's corporation) by her own act was held out to have a title she did not really have. In any event, she held the title in trust for plaintiff, subject to the latter's performance of the contract."

We have given consideration to the suggestions advanced by defendant that plaintiff is estopped from asserting her claimed rights. There is no merit to this proposition.

Judgment affirmed.