# NELS P. WESTBERG AND ANOTHER v. MARTIN WILSON AND ANOTHER.[1]

February 11, 1932.

No. 28,643.

*Leonard Eriksson* and *Harold Ranstad,* for appellants.
*Owen V. Thompson* and *Field & Field,* for respondents.

WILSON, C. J.

Plaintiffs appealed from an order denying their motion for a new trial.

[1]Reported in 241 N. W. 315.

Nels P. Westberg, herein mentioned as plaintiff, owned a vacant lot in the city of Fergus Falls. Martin Wilson, herein mentioned as defendant, was a carpenter, builder, and contractor. Plaintiff and defendant made a written agreement wherein it was agreed that defendant was to do all carpenter work and furnish all lumber and millwork in constructing a dwelling on plaintiff's lot for $3,550. Plaintiff was to furnish other materials, including heating and plumbing, plastering, and painting, but defendant was to pay therefor in the first instance. Plaintiff was also to pay for fire and tornado insurance, the making of contracts, expenses of transfers, and taxes. That upon the completion of the building plaintiff would convey the premises to defendant with abstract of good title, each to furnish receipted bills for all labor and material furnished. That upon the arrival of the time for so conveying the premises to defendant, the parties should determine the total costs and disbursements made by defendant, including the $3,550, and defendant should, upon receiving the deed of conveyance, give back to plaintiff "a contract for deed, the same to be on the regular contract deed form, and provide therein for the reconveying of said premises" to plaintiff upon full payment of the total amount so determined, to be paid in instalments of $45 per month.

The building was completed October 1, 1924, and an accounting was then had in which the amount to be paid defendant was determined at $4,968.70. The deed was then executed and delivered to defendant, who in turn executed and delivered a contract for deed to plaintiff. The building contract was thereby performed.

Thereupon plaintiff took possession of the property and performed his obligations as specified in the contract for deed until March 1, 1929, when he ceased to make further payments. Plaintiff being in default, defendant on July 8, 1929, served the usual statutory 30 days' notice, in form canceling the contract for deed. Plaintiff did not remove the default within 30 days as he had a right under our statute to do. He brought this action to annul the cancelation and to have the transaction declared an equitable mortgage and invalid on the ground of usury. The trial court refused the relief sought and sustained the cancelation.

■ The mechanics of this transaction constitute a foundation for either of two conclusions, viz: (1) That the transaction was an equitable mortgage; (2) a bona fide sale or contract for sale back according to the terms of the contract for deed. The trial court found the latter and negatived the existence of an equitable mortgage.

Plaintiff now urges that the findings of the trial court are not supported by the record and that the existence of an equitable mortgage appears from the building contract, the deed, and the contract for deed as a matter of law.

But at the outset the papers speak for themselves. They make a prima facie case of being what they purport to be, viz. a conditional sale. Citizens Bank v. Meyer, 149 Minn. 94, 182 N. W. 913. The burden of proving the existence of an equitable mortgage is upon the plaintiff.

In determining whether the transaction constitutes an equitable mortgage or a conditional sale the controlling question is what was the intention of the parties. Did they intend security or sale? The rule is definitely settled that such intention is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances. Citizens Bank v. Meyer, 149 Minn. 94, 182 N. W. 913; Dennis v. Swanson, 176 Minn. 267, 223 N. W. 288; Roehrs v. Thompson, 179 Minn. 73, 228 N. W. 340; Minnesota B. & L. Assn. v. Closs, 182 Minn. 452, 234 N. W. 872; Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450; Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623; 41 C. J. 331, § 96. This includes the previous negotiation of the parties. 41 C. J. 337, § 100. We are not limited to the papers for the purpose of ascertaining the true intention of the parties. 41 C. J. 329, § 95; 41 C. J. 348, § 118. We consider their relative situation and generally all pertinent facts having a tendency to fix and determine the real nature of their design and understanding.

What then are the attendant facts and circumstances in this case which bear upon the question of the intent of the parties? The papers do not mention the word "debt," "security," or "mortgage." This is a strong circumstance indicating that the parties did not

have in mind a mortgage. Plaintiff was a business man with business experience. He must have thoroughly understood the nature of the transaction. With plaintiff's experience and general knowledge he must have known that defendant would not have made this deal with him had defendant understood it to be a mortgage. On the other hand, plaintiff was apparently in financial difficulties. It is doubtful if defendant would have done what he did do if he had been required to take a mortgage to secure the payment of the amount of money specified in the contract for deed. Some people are prone to look upon such a transaction as an effort to deprive a debtor, and mortgagor, of his one-year period in which to redeem. Others again see an advantage in a transaction of such form, in that the owner contracting to convey, in many instances, as perhaps here, would not have entered into the transaction if his rights were limited to those of a mortgagee. To deprive the parties of the right of making such a conditional sale might deprive the purchaser of an opportunity of acquiring a home on easy payments.

The papers were prepared by a lawyer. Had he been advised that the transaction was construed or understood by the parties as having the characteristics of an equitable mortgage, he presumably would have written into the deed, in compliance with G. S. 1923 (1 Mason, 1927) § 2322, the fact that it was intended as security. While the omission of the requirement of the revenue statute is not here controlling, Farmers Bank v. Woolery, 156 Minn. 193, 194 N. W. 759; Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623, it is significant.

Plaintiff does not give any testimony directly showing that either of the parties intended the transaction to be a mortgage. Subsequently, however, he became a voluntary bankrupt, and in listing his property in his schedule of assets he described this home as having been "purchased under a contract for deed, * * * which premises petitioner purchased some four years ago under a contract for deed from Martin Wilson." This reflects light upon his original understanding and meaning. 41 C. J. 331, § 95. The language of the building contract is consistent with the prima facie

case for conditional sale. It specified that the contract to convey back was to be put upon "the regular contract deed form." Defendant testified that he "sold" plaintiff the premises, having in mind the contract for deed.

The established test—intention—for the solution of the question involved recognizes that the parties have a right to make the agreement so that such a transaction might be either an equitable mortgage or a conditional sale. That is why we look for the intention. The parties had a right to make the bargain either way that they in good faith intended. Indeed, before it could be construed as an equitable mortgage it would have to be made to appear that both parties so intended. Such has always been the rule. Indeed, as early as Conway's Executors v. Alexander, 7 Cranch, 218, 236, 3 L. ed. 321, Chief Justice Marshall stated the rule:

"The question to be decided is, whether Robert Alexander, by his deed of March, 1788, made a conditional sale of the property conveyed, by that deed, to trustees, which sale became absolute by the non-payment of 700 pounds, with interest on the 1st of July 1790, and by the conveyance of the 19th of that month, or is to be considered as having only mortgaged the property so conveyed.

"To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the Court of Chancery, in a considerable degree, the guardianship of adults as well as of infants. Such contracts are certainly not prohibited either by the letter or the policy of the law. But the policy of the law does prohibit the conversion of a real mortgage into a sale. And as lenders of money are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by persons of this description to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages. For this reason the leaning of Courts has

been against them, and doubtful cases have generally been decided to be mortgages. But as a conditional sale, if really intended, is valid, the inquiry in every case must be, whether the contract in the specific case is a security for the repayment of money or an actual sale."

Plaintiff puts reliance upon Lundeen v. Nyborg, 161 Minn. 391, 393, 201 N. W. 623, but it is sufficient to say that in that case the second contract recited "as security for the payment of $4,300." This of course was an important fact which is absent in the case at bar.

We are of the opinion that the evidence is sufficient to support the finding of the trial court that the transaction constituted a conditional sale.

Plaintiff assigns as error the court's denial of his request to submit special issues to a jury. The application rests in the sound discretion of the trial court, and the record fails to show any abuse of the discretion in the denial of the application. Fundamentally it was the duty of the court to try the issues involved, and the court should do so unless it was convinced that it should act otherwise. Messerall v. Dreyer, 152 Minn. 471, 189 N. W. 446; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9838.

Affirmed.